United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 30, 2026

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-90448 |
| RHODIUM ENCORE LLC, *et al.*, | § | |
| | § | CHAPTER 11 |
| | § | |
| Debtors. | § | |
| | § | |
| 345 PARTNERS SPV2 LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 25-3413 |
| | § | |
| NATHAN NICHOLS, *et al.*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION GRANTING PLAINTIFFS' MOTION TO REMAND

This matter comes before the Court on the motion of Plaintiffs 345 Partners SPV2 LLC, Grant Fairbairn, as Trustee and on behalf of the Grant Fairbairn Revocable Trust, Nina Fairbairn, as Trustee and on behalf of the Nina Claire Fairbairn Revocable Trust, Richard Fullerton, William Ho, as Trustee and on behalf of the GR Fairbairn Family Trust, NCF Eagle Trust, GRF Tiger Trust, and NC Fairbairn Family Trust, Scott Kintz, as Trustee and on behalf of the Kintz Family Trust, Jacob Rubin, Transcend Partners Legend Fund LLC, Valley High LP, Jerald Weintraub, as Trustee and on behalf of the Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended, and Mike Wilkins, as Trustee and on behalf of the Wilkins-Duignan 2009 Revocable Trust (collectively, "Plaintiffs") requesting this Court remand

1 / 18

this case to the state court in which it was originally filed.[1]  For the reasons explained below, the Court grants Plaintiffs' Motion for Remand.

## BACKGROUND

Defendants Nathan Nichols, Chase Blackmon, Cameron Blackmon, Nicholas Cerasuolo were founders, executives, or former members of the management team at Rhodium[2], Debtors in the above-referenced Chapter 11 cases.[3]  Before ceasing operations, Rhodium was a Bitcoin mining operation.[4]  The individual defendants were also managing members of Defendant Imperium Investment Holdings LLC ("Imperium").[5]

In March 2020, Imperium and Whinstone US, Inc. ("Whinstone") formed a joint venture—Rhodium JV LLC—to mine crypto currency at a hosting center in Rockdale, Texas ("Rockdale Site").[6]  Later, in January 2021, Rhodium began moving forward with a plan to build out and accept investors in an additional mining operation at the Rockdale Site known as "Building D".[7]  Plaintiffs allege that on or about January 4 through February 5, 2021, they invested approximately $33 million in Rhodium through promissory notes backed by security agreements.[8]

At around the same time, disputes between Whinstone and Rhodium began to unfold. As alleged by Defendants, after Winter Storm

---

[1] ECF No. 5; ECF No. 6.

[2] Debtors in the above-referenced Chapter 11 cases are as follows: Rhodium Encore LLC, Jordan HPC LLC, Rhodium JV LLC, Rhodium 2.0 LLC, Rhodium 10MW LLC, Rhodium 30MW LLC, Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium Ready Ventures LLC, Rhodium Industries LLC, Rhodium Encore Sub LLC, Jordan HPC Sub LLC, Rhodium 2.0 Sub LLC, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, and Rhodium Renewables Sub LLC (collectively referred to herein as, "Rhodium" or "Debtors").

[3] *See* Case No. 24-90448, ECF No. 2062 at 7.

[4] ECF No. 42-1 at 8.

[5] ECF No. 13 at 3.

[6] ECF No. 13 at 4.

[7] ECF No. 13 at 5.

[8] ECF No. 42-1 at 11–12.

Uri hit Texas, Whinstone was entitled to receive payments on account of ERCOT's demand response programs allowing power to be sold to the grid.[9] Under prior agreement, any profit received from selling electricity back to the grid would be passed along to Rhodium.[10]

As further alleged by Defendants, Whinstone failed to perform its obligations under various agreements.[11] Defendants allege that Whinstone misrepresented the amounts it received during Winter Storm Uri in order to induce Rhodium to enter a settlement regarding the total amounts due.[12] Later, after Whinstone was acquired by Riot Blockchain, Inc. ("Riot"), Defendants allege that Whinstone backed out of the parties' agreements regarding Building D and began refusing to perform under various other agreements to hurt Rhodium's business.[13] These allegations resulted in substantial litigation that was later settled by the parties on April 8, 2025.[14]

On August 24, 2024, Rhodium filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").[15]

On December 12, 2024, Plaintiffs filed a state court petition in Tarrant County, Texas.[16] Among several allegations, Plaintiffs' complaint contains causes of actions against Defendants for fraud, fraudulent inducement, and fraud by nondisclosure in relation to Riot's acquisition of Whinstone.[17] Plaintiffs allege that Defendants knowingly and intentionally failed to disclose Riot's acquisition of Whinstone to induce Plaintiffs to make an investment into Rhodium.[18]

---

[9] ECF No. 13 at 5.
[10] ECF No. 13 at 5.
[11] ECF No. 13 at 5.
[12] ECF No. 13 at 5.
[13] ECF No. 13 at 6.
[14] *See* Case No. 24-90448, ECF No. 880; Case No. 24-90448, ECF No. 921.
[15] Case No. 24-90448, ECF No. 1.
[16] ECF No. 42-1.
[17] ECF No. 42-1 at 21–22.
[18] ECF No. 42-1 at 21.

Plaintiffs contend that Defendants had knowledge of the Riot transaction in December 2020—before Plaintiffs made their investment—and intentionally concealed this information so that Plaintiffs could invest.[19]   Plaintiffs allege that this information was material to Plaintiffs because, had they known about the Riot transaction, they would not have made their investment.[20]  According to the Plaintiffs, Riot was a self-miner and a direct competitor of Rhodium.[21]

Further, in their complaint, Plaintiffs allege causes of actions for fraud, fraudulent inducement and fraud by nondisclosure in relation to a "Roll-up transaction".[22]   The Roll-up transaction was a corporate reorganization that involved non-Imperium investors in certain operating companies, like Plaintiffs as investors in Rhodium Encore, exchanging their interests in those companies for shares in Rhodium Enterprises.[23]   After all non-Imperium interests in the operating companies were contributed to Rhodium Enterprises, interests in Rhodium Enterprises were then exchanged for interests in Rhodium Technologies.[24]

Plaintiffs allege that Defendants made several misrepresentations to them to induce Plaintiffs into converting part of their investments into equity in Rhodium Enterprises, and thus, giving up protections tied to their original investments.[25]   Plaintiffs further

---

[19] ECF No. 42-1 at 21.

[20] ECF No. 42-1 at 21–22.

[21] ECF No. 42-1 at 9.

[22] ECF No. 42-1 at 22–23.

[23] ECF No. 42-1 at 17–18; Case No. 24-90448, ECF No. 35 at 17–19.

[24] ECF No. 42-1 at 18; Case No. 24-90448, ECF No. 35 at 17–19.

[25] ECF No. 42-1 at 13–18. In its state court petition, Plaintiffs allege that Defendants made material representations to them regarding Building D to induce them to agree to the Roll-up. Plaintiffs claim Defendant Nichols falsely assured Plaintiffs that Building D was "100% a go." Plaintiffs contend Defendants assured Plaintiffs that Rhodium's partnership with Whinstone had "never been stronger," and that Rhodium had a signed contract related to Building D despite knowing that Rhodium likely could not raise sufficient funding for Building D. During the managerial presentations pitching the Roll-up, Plaintiffs claim Defendants falsely projected 300MW of growth related to Building D and a $3 billion base valuation for

allege that Defendants told Plaintiffs the Roll-up transaction would not alter the distribution of economic interests in the operating companies between Imperium and non-Imperium investors. They allege that before the Roll-up, Imperium owned approximately 55.6% of the value of the operating companies, but after the Roll-up, Imperium increased its ownership to approximately 62%. They contend the Roll-up transaction should have resulted in Rhodium Enterprises owning 44.4% of the value of the operating companies, but instead Rhodium Enterprises only ended up owning around 37.9%. Plaintiffs allege Defendants used the Roll-up transaction to misappropriate around 6.5% of the value of the operating companies.

On January 21, 2025, the Defendants removed the state court action to the United States Bankruptcy Court for the Northern District of Texas.[26] The Plaintiffs then filed their Motion for Remand on February 19, 2025.[27] Defendants then moved to transfer venue on February 24, 2025, and an agreed order was signed on April 11, 2025 transferring the case to the Southern District of Texas, Houston Division.[28] On June 5, 2025, the case was transferred into this Court.[29]

Plaintiffs' Motion to Remand was set for hearing on October 30, 2025, and was thereafter continued by agreement until after plan confirmation.[30] The Debtors' plan was confirmed on December 19, 2025.[31] Section 5.13(f) of the Debtors' Confirmed Plan states: "Nothing in this Plan shall affect any right of the Transcend Group to recover amounts from the Founders and/or Imperium in the adversary

---

the next round of financing, despite knowing that was already a dead deal. Plaintiffs further allege Defendants intentionally misrepresented to Plaintiffs that they would ensure the Roll-up transaction did not impact Rhodium's commitment or ability to repay the notes.

[26] ECF No. 1 at 1.
[27] ECF No. 5.
[28] ECF No. 24.
[29] ECF No. 28.
[30] ECF No. 43.
[31] Case No. 24-90448, ECF No. 2170.

proceeding styled *345 Partners SPV2 LLC, et al. v. Nathan Nichols, et al.*, Adv. No 25-03413, currently pending in the Bankruptcy Court."[32]

Before the continued hearing, the Court signed an order requesting additional briefing from the parties to analyze what impact the Fifth Circuits' most recent opinion in *Carnero* had on Plaintiffs' Motion to Remand.[33]   The Court heard the parties' arguments on Plaintiffs' Motion to Remand on February 13, 2026.

## JURISDICTION

28 U.S.C. § 1334(b) provides district courts with jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 157(a) states: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."   This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

The parties dispute whether the Court has subject matter jurisdiction over this adversary proceeding.  The Plaintiffs argue that because the court lacks subject matter jurisdiction over this proceeding, the case should be remanded to the state court where it was originally filed.[34]   The Defendants argue that the Plaintiffs' Motion should be denied because there is "related to" bankruptcy jurisdiction as well as diversity jurisdiction.[35]   Thus, because the Court "always has jurisdiction to determine its own jurisdiction," the Court will begin its discussion by determining whether it has jurisdiction over this action. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002).

---

[32] Case No. 24-90448, ECF No. 2062 at 29.
[33] ECF No. 49.
[34] ECF No. 6 at 12–14.
[35] ECF No. 13 at 11.

## DISCUSSION

28 U.S.C. § 1452 provides a statutory mechanism for removing and remanding cases related to bankruptcy cases. For removal, § 1452(a) provides: "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."[36] 28 U.S.C. § 1452(a).

"The statutory provision relied upon to remove the state court lawsuit determines which scheme is substantively applied when deciding whether to remand the case." *In re Ciclon Negro, Inc.*, 260 B.R. at 835. After a claim is removed under § 1452(a), § 1452(b) permits courts to "remand such claim or cause of action on any equitable ground." *See* 28 U.S.C. § 1452(b). Thus, when compared to the more technical and procedural requirements set out in § 1447(c), § 1452 provides bankruptcy courts with a broader range of discretion in deciding to remand. *See In re Ciclon Negro, Inc.*, 260 B.R. at 835; 28 U.S.C. § 1452(b); 28 U.S.C. § 1447(c).

### I.    Does the Court have Subject Matter Jurisdiction?

Plaintiffs argue the Court must remand this action because the Court does not have subject matter jurisdiction over this case.[37] Because jurisdiction under § 1334 is required for removal under the bankruptcy removal statute, the Court will first analyze whether it has subject matter jurisdiction over this adversary proceeding. *See* 28 U.S.C. § 1452(a).

Subject matter jurisdiction is determined at the time of removal. "If. . . jurisdiction exists at the time of removal subsequent events 'cannot divest the district court of that subject matter jurisdiction.'" *Lee*

---

[36] A party may also remove a state court lawsuit to a federal bankruptcy court under the general removal statute, 28 U.S.C. § 1441. *Texas Gulf Trawling Co. v. RCA Trawlers & Supply, Inc. (In re Ciclon Negro, Inc.)*, 260 B.R. 832, 835 (Bankr. S.D. Tex. 2001). Here, however, the Defendants elected to remove under the bankruptcy removal statute found at 28 U.S.C. § 1452.

[37] ECF No. 6 at 12–14.

*v. Choudhri (In re Briar Bldg. Houston LLC)*, 649 B.R. 719, 723–24 (Bankr. S.D. Tex. 2023) (quoting *In re Enron Corp. Sec.*, 535 F.3d 325, 336 (5th Cir. 2008)).  Thus, despite the fact that the Debtors' plan has been confirmed, the Court will determine whether subject matter jurisdiction existed at the time the Defendants removed the case to the federal court in the Northern District of Texas.[38]

Section 1334 gives the Court jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  "Arising under" jurisdiction is based on causes of action expressly created by title 11.  *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.").  Plaintiffs assert claims created by Texas state law, so this type of jurisdiction does not apply.[39]  "Arising in" jurisdiction is based on claims that have no existence outside of bankruptcy.  *See id.* at 97.  This type of jurisdiction does not apply either because Plaintiffs' claims are state law claims that can exist outside of bankruptcy.[40]  Thus, here the jurisdictional analysis boils down to whether there is "related to" jurisdiction in this case.  *See* 28 U.S.C. § 1334(b).

*Pacor* is instructive on this front.  *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984).  "Related to" jurisdiction exists when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  *Id.* at 994; *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (noting the Fifth Circuit has

---

[38] Plaintiffs argue that the Court has no subject matter jurisdiction because this case does not affect plan implementation or execution. *See* ECF No. 52 at 3–5. Although courts in the Fifth Circuit apply this narrower standard to determine post-confirmation jurisdiction, here, this case was removed before plan confirmation. *See Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 389–90 (5th Cir. 2001). Therefore, the Court must instead analyze whether jurisdiction existed at the time this case was removed to the federal court pre-confirmation. *See In re Enron Corp. Sec.*, 535 F.3d 325, 336 (5th Cir. 2008).

[39] *See* ECF No. 42-1 at 21–23.

[40] *See* ECF No. 42-1 at 21–23.

8 / 18

"adopted the *Pacor* test with little or no variation"). The proceeding need not be against the Debtor or their property. *Pacor*, 743 F.2d at 994. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

The Court holds that it has "related to" jurisdiction over this case. At the time of removal pre-confirmation, it was conceivable that this case could have an impact on the Debtors' Chapter 11 cases. This is because under the Debtors' by laws and indemnity agreements[41], the Debtors could potentially be required to indemnify the Defendants for actions taken on behalf of the Debtors. The Plaintiffs claims revolve around alleged misrepresentations the Defendants made while they were directors and officers of the Debtors.[42] Either the Debtors would have had to bear the cost of litigation against the Defendants directly or indirectly through the Debtors' D&O insurance. Therefore, because the outcome of this action could conceivably have had an effect on the Debtors' estates at the time of removal, the Court has subject matter jurisdiction over this adversary proceeding. *See Pacor*, 743 F.2d at 994.

## II.     Whether Plaintiffs' Claims are Direct or Derivative Claims?

Plaintiffs further contend remand is appropriate because their claims are direct claims against non-debtor Defendants.[43] In drawing similarities between this case and the Fifth Circuit's case in *Seven Seas*, the Plaintiffs argue this Court should similarly find their claims are direct claims and remand the case. *See Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575 (5th Cir. 2008). Defendants, however, argue that Plaintiffs claims are derivative claims belonging to the Debtors' bankruptcy estates.[44]

---

[41] *See* ECF No. 41-12 at 8–10; ECF No. 41-13.

[42] *See* ECF No. 42-1 at 21–23.

[43] ECF No. 6 at 8–12.

[44] ECF No. 13 at 11–14.

Defendants contend that because the claims belong to the Debtors' estates, they were resolved through a consensual, plan-based settlement.[45]

Whether the Plaintiffs' claims in this action belong to the Debtors' estates "depends on whether under applicable state law the debtor could have raised the claim[s] as of the commencement of the case." *Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994). In making this determination, Courts "look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury." *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 584. If the Plaintiffs' alleged harm is only indirect and the Debtors could have raised the Plaintiffs' claims here as direct claims against themselves, then the claims belong to the estate. *Id.* (citing *In re Educators Group Health Trust*, 25 F.3d at 1284). "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Id.*

The Fifth Circuit in *Seven Seas* addressed a similar argument. *See In re Seven Seas Petroleum, Inc.*, 522 F.3d at 585. In holding that the asserted claims were not property of the estate, the court looked at the nature of the injury asserted and found that the claims alleged more than an injury that was merely derivative of an injury to the debtor. *See id.* at 584–85. There, the Fifth Circuit held that bondholders could bring claims against the debtor, Seven Seas, for damages they personally suffered as a result of their reliance on misrepresentations made when they invested in unsecured notes. *Id.* at 590. The Fifth Circuit concluded "Seven Seas simply was not harmed by misrepresentations made to the bondholders to induce them to buy." *Id.* at 585.

"[W]hen a party relies upon a corporate misrepresentation in a manner distinguishable from other similarly situated, the fraud claim

---

[45] ECF No. 51 at 4.

belongs to the party, not the corporation." *Seven Talents, LLC v. Neugebauer (In re With Purpose, Inc.)*, 654 B.R. 715, 722–23 (Bankr. N.D. Tex. 2023). Here, the Plaintiffs allege Defendants made several misrepresentations to them to fraudulently induce them to make an investment. They allege Defendants knew of Riot's acquisition of Whinstone and purposefully withheld that information so that Plaintiffs would invest. The Plaintiffs allege that without Defendants' fraudulent misrepresentations they would have chosen not to invest.

The Court finds that Plaintiffs' claims are direct injuries belonging solely to the Plaintiffs. Like the bondholders in *Seven Seas*, the Plaintiffs' claims here are a result of their reliance on alleged misrepresentations made to them that caused them to invest.[46] These alleged misrepresentations injured only the Plaintiffs and seemingly benefited the Debtors as they received millions of dollars in the Plaintiffs' investments. *See In re With Purpose, Inc.*, 654 B.R at 723 (finding the plaintiffs' claims were direct claims and that the "Debtor itself *benefitted* from the[] alleged misrepresentations as the Debtor received millions in investment through the investors' purchase of convertible notes.").

Likewise, Plaintiffs allege the Defendants' misrepresentations relating to Building D and the repayment of their Debt caused Plaintiffs' injuries when they relied on such misrepresentations to agree to the Roll-up transaction. The alleged injuries are personal to the Plaintiffs because their reliance on Defendants' alleged misrepresentations resulted in them changing their original, protected investment into equity. The Debtors were simply not injured by Defendants' alleged misrepresentations that resulted in Plaintiffs exchanging their original

---

[46] In another case on point, Judge Larson in the Northern District found that plaintiffs' claims alleging negligent misrepresentation and fraudulent inducement were direct injuries because the alleged misrepresentations injured only the Plaintiffs. *Seven Talents, LLC v. Neugebauer (In re With Purpose, Inc.)*, 654 B.R. 715, 722–23 (Bankr. N.D. Tex. 2023).

investment into shares.[47]  Plaintiffs have alleged a direct injury that is not derivative of the Debtors' estate, therefore, Plaintiffs' claims are direct claims.

For clarity, the Court distinguishes Plaintiffs' claims relating to alleged misrepresentations that induced Plaintiffs to agree to the Roll-up transaction from claims that Defendants misappropriated 6.5% of the value of the operating companies during the Roll-up transaction.  Claims relating to the Defendants' alleged misappropriation are derivative claims that were released in the Debtors' confirmed plan.[48]  If, as alleged, Defendants engaged in self-dealing during the Roll-up transaction and wrongfully took 6.5% of value in the operating companies from Rhodium Enterprises, then the Defendants directly injured the Debtors (and all their creditors) and any claims arising out of Debtors' direct injuries belonged to the bankruptcy estate.[49]  Conversely, Plaintiffs' allegations of intentional misrepresentations made to *them*, that induced *them* to agree to the Roll-up transaction are direct injuries that belong solely to the Plaintiffs.

Because Plaintiffs allege direct claims belonging only to them, the Plaintiffs are the only ones who may pursue these claims against the Defendants.  However, unlike the Fifth Circuit's case in *Seven Seas*, the Court has jurisdiction over this proceeding and thus is not required to remand solely because Plaintiffs allege direct claims.  *Cf. In re Seven Seas Petroleum, Inc.*, 522 F.3d at 589 (finding "Our conclusion that the claims brought by the bondholders are not property of the Seven Seas

---

[47] The Court notes that it is possible for the Debtors to have claims against the Defendants arising from "the same general series of events and broad course of conduct." *See In re Seven Seas Petroleum, Inc.*, 522 F.3d at 585.

[48] *See* Case No. 24-90448, ECF No. 2062 at 45–46.

[49] Additionally, Plaintiffs' complaint contains allegations that Defendants mismanaged and defrauded Rhodium in numerous ways. *See* ECF No. 42-1 at 19–21. If alleged as the basis for claims against the Defendants, these too would be derivative claims because they relate to direct injuries against the Debtors. However, Plaintiffs clarify that they "hope for action by the Rhodium debtors' estates to recover from Defendants for their mismanagement and negligence. For Plaintiff's purposes, importantly, but for Defendants' lies, Plaintiffs would not have invested in Rhodium in the first place."

bankruptcy estate requires that the claims be remanded to state court for lack of jurisdiction unless we can identify some other basis for bankruptcy jurisdiction.").

### III.   Unanimity under 28 U.S.C. § 1446(b)(2)(A)

Further, Plaintiffs allege that remand is proper because Defendant Cerasuolo did not join, or consent to the notice of removal.[50] They argue that because there is a lack of unanimity, as required by 28 U.S.C. § 1446(b)(2)(A), the Court must either remand or abstain.[51]

28 U.S.C. § 1446(b)(2)(A) provides: "When a civil action is removed solely under section 1441(a) [28 U.S.C. § 1441(a)], all defendants who have been properly joined and served must join in or consent to the removal of the action." Here, Defendants removed under 28 U.S.C. § 1452.[52]   Under the express words of the statute, this subsection would not apply since Defendants did not remove "solely under section 1441(a)." *See Cal. Pub. Employees' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004) (citing *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir. 1985)) ("[B]ecause any one 'party' can remove under Section 1452(a), removal under that provision, unlike removal under Section 1441(a), does not require the unanimous consent of the defendants."). Therefore, the Court is not required to remand the case as a result of an alleged failure to meet the requirements of 28 U.S.C. § 1446(b)(2)(A).

### IV.   Mandatory Abstention

Next, Plaintiffs allege that even if the Court has subject matter jurisdiction, mandatory abstention applies and prevents this Court from adjudicating the case.[53]   28 U.S.C. § 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon
> a State law claim or State law cause of action, related to a

---

[50] ECF No. 6 at 19–20.
[51] ECF No. 6 at 19–20.
[52] ECF No. 1 at 1.
[53] ECF No. 6 at 14–16.

case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Fifth Circuit interprets this section as mandating abstention when "(1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court." *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007).

Because mandatory abstention is disputed by the parties, the burden is on the Plaintiffs, as the moving parties, to show mandatory abstention applies. *In re With Purpose, Inc.*, 654 B.R. at 729. Plaintiffs argue that the first element is met because there is no basis for federal jurisdiction under § 1334(b) or under any other independent basis. Plaintiffs allege diversity jurisdiction does not exist because multiple Defendants are citizens of Texas, and the forum defendant rule prohibits removal.[54]

Plaintiffs' argument misses the mark. In determining whether the first element of mandatory abstention is met, the Court must decide whether there was any other independent basis for federal jurisdiction. *See* 28 U.S.C. § 1334(c)(2). That is, is it possible that the Plaintiffs could have commenced their case in federal court absent jurisdiction under § 1334. *See* 28 U.S.C. § 1334(c)(2). The Court finds that the answer to that is yes. Based on the state court petition, it is possible the Plaintiffs could have commenced this action in federal court under 28 U.S.C. § 1332— diversity jurisdiction.

---

[54] ECF No. 6 at 15.

14 / 18

28 U.S.C. § 1332 provides district courts with original jurisdiction over all civil proceedings where: i) the matter in controversy exceeds the sum or value of $75,000 and there is ii) complete diversity between the parties. "The concept of complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). Here, the Plaintiffs could have commenced the case in a U.S. court based on diversity jurisdiction. *See* 28 U.S.C. § 1332. Based on the state court petition and the parties' pleadings and declarations, there is complete diversity between the parties.[55] Defendants allege they are citizens of Texas, Tennessee, Wyoming, and Puerto Rico.[56] Plaintiffs allege to be citizens of California, Nevada, and Delaware.[57] Plaintiffs also seek monetary relief which "far exceeds" $75,000.[58] Plaintiffs do not seem to dispute that there is complete diversity or that the amount in controversy is met, but instead argue there is no diversity jurisdiction because of the "forum-defendant rule."[59]

The forum defendant rule, however, functions to *prevent* removals in cases where the *only* basis for removal was diversity jurisdiction and one of the defendants is a citizen of the state in which the case is brought. *See* 28 U.S.C. § 1441(b)(2). Section 1441(b)(2) provides:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 U.S.C. § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2).

Here, Defendants removed the case under § 1452, so diversity jurisdiction was not the only basis for removal. Further, as discussed

---

[55] ECF No. 42-1 at 4–7.

[56] ECF No. 41-26; ECF No. 41-27; ECF No. 41-28; ECF No. 41-29; ECF No. 42-1 at 4–7.

[57] ECF No. 42-1 at 4–7.

[58] ECF No. 42-1 at 4.

[59] ECF No. 6 at 15–16.

above, the forum defendant rule would only *prevent* removal.  The rule would not have worked to prevent the Plaintiffs from *commencing* the case in a federal court.  Therefore, because Plaintiffs could have commenced this action on an independent jurisdictional basis, other than § 1334(b), the Court is not required to abstain.[60]

## V.      Permissive Abstention

Finally, Plaintiffs argue that even if the Court has subject matter jurisdiction and mandatory abstention does not apply, the Court should abstain from hearing this action in the exercise of its discretion under 28 U.S.C. § 1334(c)(1), and/or remand on any equitable ground under 28 U.S.C. § 1452(b).

Even if the Court is not required to abstain, it has "broad discretion to abstain from hearing state law claims whenever appropriate." *Gober v. Terra+Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996).  Section 1334(c)(1) provides:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

Courts consider fourteen non-exclusive factors in exercising its discretion:

> (1) the effect or lack thereof on the efficient administration of the estate;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficult or unsettled nature of the applicable law;
> (4) the presence of related proceedings commenced in state court or other nonbankruptcy proceeding;

---

[60] Because the first element of mandatory abstention is not met, the Court does not need to reach the other factors.

(5) the jurisdiction basis, if any, other than § 1334;

(6) the degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the bankruptcy docket;

(10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*See In re With Purpose, Inc.*, 654 B.R. at 729.

Further, under 28 U.S.C. § 1452(b) a court may also abstain on "any equitable ground." Courts have noted that the factors governing permissive abstention and equitable remand are almost identical. *See Doe v. Archdiocese of New Orleans Indem., Inc.*, No. 20-1338, 2020 U.S. Dist. LEXIS 143512, at *6–7 (E.D. La. Aug. 11, 2020). This is because the statutes are similar in purpose, and factors that weigh in favor of permissive abstention weigh in favor of a remand under § 1452(b). *See Regal Row Fina, Inc. v. Wash. Mut. Bank, FA*, 53 Collier Bankr. Cas. 2d (MB) 882, 2004 U.S. Dist. LEXIS 26704, at *27–28 (N.D. Tex. Dec. 9, 2004).

The Court holds that it will abstain in its discretion. There are certainly factors which favor denial of Plaintiffs' Motion for Remand. First, there is some degree of relatedness to the main bankruptcy case based on proofs of claim filed by Plaintiffs and settlements and releases within the plan. Second, this action could have commenced under 28 U.S.C. § 1332(a)—diversity jurisdiction. Third, there is nothing to suggest that either party was involved in forum shopping. The Chapter

17 / 18

11 cases were already pending in this Court before this action was filed, removed, and transferred.

However, there are critical factors that do weigh in favor of abstention. First, Plaintiffs claims against Defendants are based on state law. Second, this is not a core proceeding. Third, the parties in this action are non-debtors. Fourth, Plaintiffs have demanded a jury trial and have expressed that they do not consent to entry of a final judgment by this Court.[61] Though the court could prepare the case for trial, the jury trial would have to be in front of a district court. *See In re Ciclon Negro, Inc.*, 260 B.R. at 838.

Although there are strong arguments both for and against permissive abstention, the Court will exercise its broad discretion and permissively abstain and remand this case.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion to Remand.

Plaintiffs are requested to file a proposed order reflecting the Court's ruling (including guardrails for the direct versus derivative claims) within 14 days.

Signed: March 30, 2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

---

[61] ECF No. 4.